UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOE HOUSTON, individually,

Plaintiff,

v.                                        CASE NO.  8:13-CV-1845-T-17AEP

7-ELEVEN, INC.,

Defendant.

_____/

ORDER

This cause is before the Court on:

| | | |
|---|---|---|
| Dkt. 76 | Motion to Dismiss, Or In the Alternative Motion for Summary Judgment |
| Dkt. 77 | Statement of Undisputed Facts |
| Dkt. 78 | Notice |
| Dkt. 79 | Notice - Deposition Houston Vol. 1 |
| Dkt. 80 | Notice - Continuation Deposition |
| Dkt. 81 | Request for Judicial Notice |
| Dkt. 82 | Notice - Declaration Brian Padgett |
| Dkt. 83 | Notice - Deposition Houston, Vol. 2 |
| Dkt. 84 | Notice - Deposition Lowell, Vol. 1 |
| Dkt. 85 | Notice - Deposition Lowell, Vol. 2 |
| Dkt. 86 | Notice - Declaration John Falso |
| Dkt. 87 | Notice - Declaration Jeffrey Gross |
| Dkt. 88 | Notice - Exhibit 1 |
| Dkt. 8 | Notice - Exhibit 2 |
| Dkt. 90 | Notice - Exhibit 3 |
| Dkt. 91 | Notice - Exhibit 4 |
| Dkt. 92 | Notice - Declaration Kent Christensen, Exh. A |
| Dkt. 93 | Notice - Exhs. B-D |
| Dkt. 108 | Response |
| Dkt. 109 | Notice |
| Dkt. 110 | Notice |
| Dkt. 111 | Notice |
| Dkt. 112 | Notice |

Case No. 8:13-CV-1845-T-17AEP

Dkt. 113   Notice
Dkt. 116   Motion for Leave to Reply
Dkt. 117   Opposition
Dkt. 121   Notice of Filing Lowell Affidavit
Dkt. 146   Notice - Deposition Lowell

The Amended Complaint (Dkt. 4) includes Plaintiff Joe Houston's claims for violation of Title III of the Americans with Disabilities Act, 42 U.S.C. Sec. 12181, et seq., as to five 7-Eleven stores which are located in Madeira Beach, Treasure Island, Port Richey, Hudson and Nokomis, all within the Middle District of Florida.  The stores are places of public accommodation.  In the Amended Complaint, Plaintiff Houston alleges "a realistic, credible, existing and continuing threat of discrimination from Defendant's non-compliance with the ADA" with respect to the properties; Plaintiff further alleges that "Plaintiff has reasonable grounds to believe that Plaintiff will continue to be subjected to discrimination in violation of the ADA by Defendant "(Dkt. 4, p. 12, par. 14).

Plaintiff Houston seeks a declaratory judgment, injunctive relief, and the award of attorney's fees, costs and litigation expenses.  Plaintiff seeks a declaratory judgment that determines that Defendant, at the commencement of this lawsuit, was in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. Sec. 12181, et seq.  Plaintiff Houston seek injunctive relief which includes an order to make all readily achievable alterations to the facility, or to make the facility readily accessible and usable by individuals with disabilities to the extent required by the ADA, and to require Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities.

Defendant 7-Eleven, Inc. moves to dismiss Plaintiff Joe Houston's ADA claims for lack of standing,  and because Plaintiff's claims are moot.

Plaintiff Houston opposes Defendant's Motion.

2

Case No. 8:13-CV-1845-T-17AEP

The Court previously denied Defendant's Motion to Dismiss for lack of subject matter jurisdiction (Dkt. 37).

The Amended Complaint includes allegations of the architectural barriers and other violations which Plaintiff encountered at each store, whose resolution is readily achievable  (Dkt. 4, pp. 3-10):

**Madeira Beach store**:

Accessible Routes: violation ADAAG sec. 403.3 new and 4.8.6 old

Restrooms:          violation of ADAAG 604.5.1 and 604.5.2 new and 4.16.4 old; violation ADAAG 306.3.1 and 306.2.1 new and 4.19.2 old; violation ADAAG 308.2.1 new and 4.2.6 old; violation ADAAG 609.3 new and 4.16.6 old; violation ADAAG 305.5 and 305.3 new and 4.2.4 old; violation ADAAG 606.5 new and 4.19.4 old; violation ADAAG 604.3.1 new and 4.17.3 old; violation ADAAG sec. 603.3 new and 4.196 old.

**Treasure Island store**:

Parking             violation of ADAAG sec. 502.4 new and 4.6.3 old

Accessible Routes   violation ADAAG sec. 403.5.1 new and 4.3.3 old

Restrooms           violation ADAAG 604.5.1 and 604.5.2 new and 4.16.4 old; violation ADAAG 305.5 and 305.3 new and 4.2.4 old;

Case No. 8:13-CV-1845-T-17AEP

        violation ADAAG 606.5 new and 4.19.4 old;
        violation ADAAG 604.3.1 new
        and 4.17.3 old; violation ADAAG
        604.6 new and 4.16.5 old;
        violation ADAAG 603.3 new and
        4.19.6 old.

**Port Richey store**:

| | |
|---|---|
| General: | Failure to adhere to policy and procedure to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities in violation of 28 C.F.R. Part 36.302 |
| | Failure to properly maintain accessible features and equipment required to be readily accessible, in violation of 28 C.F.R. Part 36.211 |
| Parking and Loading Zone | violation of Sec. 208.2.4 and 502.6, new ADAAG and 4.6.4 old; violation 208.3.1 of new ADAAG and 4.6.2 old |
| Accessible Routes | violation of sec. 302.2, new ADAAG and 4.5.3 old; violation 405.9 |
| Restrooms | violation 604.5.1 and 604.5.2, new ADAAG and 4.16.4 old; violation sec. 604.7, new ADAAG and 4.16.6 old; violation 305.5 and 395.3, new ADAAG and 4.2.4 old; violation 606.5, new ADAAG and 4.19.4 old. |

4

Case No. 8:13-CV-1845-T-17AEP

**Hudson store**:

| | |
|---|---|
| General: | Failure to adhere to policy and procedure etc., in violation of 28 C.F.R.  Part 36.302 |
| | Failure to properly maintain accessible features, etc., in violation of 28 C.F.R. Part 36.211 |
| Parking and Loading Zone | violation of sec. 502.4, new ADAAG and 4.6.3 old; violations of sec. 208.2.4 and 502.6, new ADAAG and 4.1.2(5)(b) old; violation of sec. 503.2.1 and 209.2.1, new ADAAG and 4.6.6 old |
| Accessible Routes | violation sec. 403.5.1, new ADAAG and 4.3.3 old; violation of sec. 405.2, new ADAAG and 4.8.2 old |
| Restrooms | violation sec. 603.3, new ADAAG and 4.19.6 old. |

**Nokomis store:**

| | |
|---|---|
| Restrooms | violation sec. 604.5.1 and 604.5.2, new ADAAG and 4.16.4 old; violation 308.2.1, new ADAAG and 4.2.6 old; violation 609.3, new ADAAG and 4.16.6 old; violation sec. 305.5 and 305.3, new ADAAG, and 4.2.4 old; violation sec. 606.5, new ADAAG and 4.19.4 old; violation sec. 604.3.1, new ADAAG and 4.17.3 old; violation 604.6 new ADAAG and 4.16.5 old; violation sec. 309.4, new ADAAG and 4.19.5 old; violation |

Case No. 8:13-CV-1845-T-17AEP

sec. 603.3 new and 4.19.6 old

Accessible Route:    violation sec. 405.9, new ADAAG.

I.  Standard of Review

A.  Fed. R. Civ. P. 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, can be a facial attack or a factual attack.  In a facial attack, the factual allegations of the Complaint are taken as true.  In a factual attack, the Court may consider matters outside the Complaint, and is free to weigh evidence and satisfy itself as to the existence of its power to hear the case.  In a factual attack, the allegations of the Complaint are not presumptively true.  Where the attack on jurisdiction implicates the merits of the plaintiff's federal cause of action, the Court should find that jurisdiction exists and deal with the objection as a direct attack on the merits of plaintiff's case, proceeding under Rule 12(b)(6) or Rule 56.  The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.  See Williamson v. Tucker, 645 F.2d 404 (5th Cir.), cert. denied, 454 U.S. 897 (1981).

B.  Fed. R. Civ. P. 56

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

Case No. 8:13-CV-1845-T-17AEP

> The plain language of Rule 56(c) mandates the entry of
> summary judgment after adequate time for discovery and
> upon motion, against a party who fails to make a showing
> sufficient to establish the existence of an element essential
> to that party's case, and on which that party will bear the
> burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.   See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."   See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary judgment may be granted."   Id. at 249-50.


II.  Statement of Facts

It is undisputed that Plaintiff is an individual with a disability; Plaintiff  has limited use of his hands and ambulates in a wheelchair.

It is undisputed that Defendant owns, leases, leases to or operates places of public accommodation.

The Court has attached the Statement of Facts submitted by Defendant to this Order.

Defendant states that the Nokomis store, a corporate store,  was permanently closed on December 13, 2013 (Dkt. 82, Padgett Declaration; Dkt. 86, Falso Declaration), and Defendant does not own or operate the Hudson store, which is a

7

Case No. 8:13-CV-1845-T-17AEP

"BCP" store (Business Conversion Program). (Dkt. 82, Padgett Declaration).

Plaintiff has submitted numerous exhibits in opposition, including, among others, Plaintiff's affidavit dated April 20, 2014. (Dkt. 109-1), and the affidavit of Peter Lowell dated April 10, 2014.

III.  Discussion

Title III of the ADA provides that:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

With respect to facilities, or portions thereof, which were constructed prior to the enactment of the ADA (existing structures), the ADA defines "discrimination" as "a failure to remove architectural barriers ... in existing facilities, ... where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(iv).  The ADA requires the removal of existing architectural or structural barriers that prevent access to existing public accommodations, when removal is "readily achievable," which is defined as "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).   If removal is not readily achievable, then the public accommodation must make its goods or services available to the disabled through alternative methods, if such alternative methods are readily achievable.  See 42 U.S.C. § 12182(b)(2)(v).

A different, and heightened, standard applies with respect to those structures

Case No. 8:13-CV-1845-T-17AEP

which were constructed post-ADA (new construction and post-ADA alterations).  In this regard, the ADA defines "discrimination" as follows:

> [W]ith respect to a facility or part thereof that is altered by, on behalf of, or for the use of an establishment in a manner that affects or could affect the usability of the facility or part thereof, a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs.

42 U.S.C. § 12183(a)(2).

Pursuant to 28 C.F.R. Part 36.404, all newly constructed facilities were required to comply with the Standards For New Construction and Alterations, Appendix A to 28 C.F.R. Part 36 ("ADAAG").  Pursuant to 28 C.F.R. Part 36.404, all altered facilities were required to comply with the ADAAG to the maximum extent feasible.  Pursuant to 28 C.F.R. Part 36.304, all measures taken to comply with barrier removal requirements of 42 U.S.C. Sec. 12182 must also comply with the ADAAG to the maximum extent feasible.

Failure to design and construct a facility in compliance with this "new construction" standard constitutes intentional discrimination.  See Access Now v. South Florida Stadium Corp., 161 F.Supp.2d 1357, 1362 (S.D. Fla. 2001); Association for Disabled Americans, Inc. v. Concorde Gaming Corp., 158 F.Supp.2d 1353 (S.D. Fla. 2001).

To prevail under Title III of the ADA, a plaintiff "generally has the burden of proving: 1) that [he] is an individual with a disability; 2) that defendant is a place of public accommodation; 3) that defendant denied [him] full and equal enjoyment of the goods, services, facilities or privileges offered by defendant (4) on the basis of his disability.  See Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001).

9

Case No. 8:13-CV-1845-T-17AEP

A party who invokes federal jurisdiction has the burden of establishing it has satisfied the "case or controversy" requirement of Article III of the Constitution.  "[T]he irreducible constitutional minimum of standing contains three elements: 1) an 'injury in fact,'–an invasion of a legally protected interest  that is (a) concrete and particularized and (b) "'actual or imminent, not 'conjectural' or 'hypothetical'";  2)  a causal connection between the asserted injury and the conduct complained of; and 3) it must be 'likely' as opposed to merely 'speculative',  that the injury 'will be redressed by a favorable decision.'"  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)(citations omitted); Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001).   Particularized means "that the injury must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n.1.

When injunctive relief is sought, a plaintiff "must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1284 (11th Cir. 2001).   A party has standing to seek injunctive relief only if the party shows "a real and immediate–as opposed to a merely conjectural or hypothetical–threat of future injury." Id.

The elements of standing "are not mere pleading requirements[,] but rather an indispensable part of the plaintiff's case." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  Therefore, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e. with the manner and degree of evidence required at the successive stages of the litigation." Id.  In response to a summary judgment motion, the plaintiff can no longer rest on... "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true.   And at the final stage, those facts (if controverted) must be "supported adequately by the evidence adduced at trial." Lujan at 561.  The evidence relevant to the standing inquiry consists of the facts as they existed at the time the plaintiff filed the complaint. Lujan,

10

Case No. 8:13-CV-1845-T-17AEP

504 U.S. at 569 n. 4.  In this case, the Complaint was filed on July 17, 2013.

Defendant argues that Plaintiff Houston cannot prove an injury in fact, or a likelihood of future injury at any of the five 7-Eleven properties.  Defendant relies on Plaintiff's deposition testimony that Plaintiff has no knowledge of barriers at the properties and no intention to return.  Defendant further argues that Plaintiff's request for injunctive relief is moot, in that there are no architectural barriers at any of the properties currently owned and operated by Defendant 7-Eleven, one store has closed permanently, and one store is not owned or operated by Defendant.

A.  Standing

In the Amended Complaint, Plaintiff Houston alleges that he has visited the properties which form the basis of this lawsuit, and plans to return to the properties in the near future to avail himself of the goods and services offered to the public, and to determine whether the properties have been made ADA compliant.  Plaintiff Houston further alleges that Plaintiff has encountered barriers at the subject properties which discriminate against him on the basis of disability.  (Dkt. 4, par. 8).  Plaintiff also alleges Plaintiff is a "tester" for the purpose of asserting his civil rights and monitoring, ensuring and determining whether places of public accommodation are in compliance with the ADA .  (Dkt. 4, par. 9).  Plaintiff Houston alleges Plaintiff is continuously aware of the violations at Defendant's facilities, and is aware it would be a futile gesture to return to the properties as long as the violations exist unless Plaintiff is willing to suffer additional discrimination.  (Dkt. 4, par. 11).  Plaintiff Houston alleges Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of Defendant's discrimination until Defendant is compelled to comply with the requirements of the ADA.  (Dkt. 4, par. 13).  Plaintiff Houston alleges that Defendant has discriminated against Plaintiff by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its places of public accommodation, and

11

Case No. 8:13-CV-1845-T-17AEP

continues to discriminate by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, etc. to individuals with disabilities; and by failing to make such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

1. Injury-in-Fact

a. Actual Injury

A plaintiff can establish an injury-in-fact by showing the plaintiff has encountered architectural barriers in a place of public accommodation which deny the plaintiff full and equal enjoyment of the goods and services offered, where removal of those barriers is readily achievable .  42 U.S.C. Sec. 12182(a),(b)(2)(iv).

A plaintiff can establish injury-in-fact by showing that the plaintiff has actual knowledge of architectural barriers, and is currently deterred from returning to a place of public accommodation because of the presence of architectural barriers.  42 U.S.C. Sec. 12188(1)(a) provides:

> Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.

In Friends of the Earth v. Laidlaw Environmental Services, 528 U.S. 167 (2000), the Supreme Court recognized deterrence as an injury-in-fact sufficient to confer standing for prospective relief.

Case No. 8:13-CV-1845-T-17AEP

A plaintiff can establish injury-in-fact by showing a loss of opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages or accommodations of any entity.  42 U.S.C Sec. 12182(a)(b).  In <u>Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Florida</u>, 508 U.S. 656 (1993), the Supreme Court held injury in fact in an equal protection case "is the denial of equal treatment resulting from the imposition of the barrier" or "the inability to compete on an equal footing." <u>Id</u>. at 666.  A party need only demonstrate "that it is able and ready to bid on contracts and that a discriminatory policy prevents it from doing so on an equal basis."   In <u>Gratz v. Bollinger</u>, 539 U.S. 244 (2003), the Supreme Court found allegations of denial of opportunity to compete for admission on an equal basis, and after denial of admission, allegations demonstrating a plaintiff is able and ready to apply as a transfer student should the University cease to use race in undergraduate admissions, sufficient to confer standing to seek prospective relief.

In determining standing the Court considers the facts as alleged at the commencement of a lawsuit.   The Court notes that a plaintiff must have standing throughout the life of a case, not just at the beginning, in order for the case to constitute a justiciable Article III case or controversy.  A showing of continuing knowledge and awareness of the presence of ADA violations which deter a plaintiff from returning to a place of public accommodation supports standing throughout the life of a case.

b.  Imminent Injury

A plaintiff can establish imminent injury by showing that the plaintiff is threatened with harm in the future because of existing or imminently threatened injury.  In <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 564 (1992), the Supreme Court found "some day" intentions to return to affected areas in the future, without any description of concrete plans or specification of when the some day will be, do not support a finding of "actual or imminent" injury.

13

Case No. 8:13-CV-1845-T-17AEP

A plaintiff can establish imminent injury by showing that a defendant  has a policy and the injury to the plaintiff stems from that policy.   Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994).

A plaintiff can establish imminent injury where a plaintiff demonstrates that the harm to plaintiff is part of a pattern of officially sanctioned behavior.  31 Foster Children v. Bush, 329 F.3d 1255, 1266 (11th Cir. 2003).

2.  Likelihood of Future Injury

A plaintiff can establish a real threat of future injury by showing a plaintiff's intent to return to a place of public accommodation which is noncompliant.  Other courts have considered the following factors: 1) the proximity of the plaintiff's residence to the place of public accommodation; 2) the plaintiff's past patronage of the establishment; 3) the definiteness of the plan to return; and 4) the plaintiff's frequency of nearby travel. Houston v. Marod Supermarkets, Inc., 733 F.3d 1323 (11th Cir. 2013).

A plaintiff can establish a real threat of future injury by showing the plaintiff will be deterred from visiting the place of public accommodation in the future because of the plaintiff's knowledge of the continuing presence of architectural barriers which deny the plaintiff full and equal enjoyment of the goods and services offered.  When the place of public accommodation being sued is located far from a plaintiff's home, in order to prove deterrence, the plaintiff must also demonstrate intent to return to the geographical area where the accommodation is located.  D'Lil v. Best Western Encina Lodge & Suites, 538 F.3d 1031 (9th Cir. 2008).  Where the plaintiff alleges injury in the form of current deterrence, it is not necessary to establish specific intent to return to the place of public accommodation.  Betancourt v. Federated Dep't Stores, 732 F.Supp.2d 693, 709 (W.D. Tex. 2010); Access for Am., Inc. v. Associated Out-Door Clubs, Inc., 188 Fed. Appx. 818, 820 (11th Cir. 2006 (Barkett, J., dissenting)("Especially in the disability context a

14

Case No. 8:13-CV-1845-T-17AEP

'specific-date/set-plans' standard would produce patently absurd results, and would almost certainly place plaintiffs in a Catch-22 as far as their credibility is concerned.")

A plaintiff can establish a real threat of future injury where the defendant has a policy, and the injury to the plaintiff stems from that policy.   Church v. City of Huntsville, 30 F.3d 1332 (11th Cir. 1994).

A plaintiff can establish a real threat of future injury where a plaintiff demonstrates that the harm to plaintiff is part of a pattern of officially sanctioned behavior.  31 Foster Children v. Bush, 329 F.3d 1255, 1266 (11th Cir. 2003).

3.  This Case

The burden of establishing standing is on Plaintiff Houston, who has invoked federal jurisdiction.  On summary judgment, Plaintiff cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts which will be taken as true for the purposes of the Motion for Summary Judgment.

Plaintiff Houston's deposition was taken on January 16, 2014 (Dkts. 79-1, 83-1). Plaintiff Houston's continuation deposition was taken February 18, 2014 (Dkt. 80-1).  On April 11, 2014, Plaintiff Houston filed an affidavit (Dkt. 109-1) in support of Plaintiff's response to Defendant's Motion for Summary Judgment.

In determining a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmovant, and draw all reasonable inferences in favor of the nonmovant.

Case No. 8:13-CV-1845-T-17AEP

The Court notes Plaintiff's testimony at his deposition, as follows:

On direct examination by Defendant at Plaintiff's deposition of January 16, 2014 (Dkt. 79-1, Dkt. 83-1):

Plaintiff Houston testified that Plaintiff understood his obligation to offer his most truthful, complete and accurate testimony on deposition.

Plaintiff testified he did not know which stores he sued in this lawsuit.

Plaintiff testified that he has no independent recollection of any specific barriers that Plaintiff claims to have encountered at any 7-Eleven location in the state of Florida other than what he sees in photographs.

Plaintiff testified that he does not have and never had any specific knowledge as to any 7-Eleven policies, procedures or practices regarding the accommodation of disabled individuals.

Plaintiff testified he could not recall any details or specifics of any nature regarding the 7-Eleven Plaintiff claims to have visited in Madeira Beach, Florida.

Plaintiff testified he recalled being at a 7-Eleven in Treasure Island, Florida in 2013, but would have to guess as to the type of claims, exterior claims, interior claims or both, without seeing pictures.

Plaintiff testified that he could not recall any details of the 7-Eleven store in Port Richey, Florida, and could not recall whether Plaintiff encountered any barriers at that store.

Plaintiff testified that he never heard of a city called Hudson, Florida.

Plaintiff testified that he had no knowledge of Nokomis, Florida,  did not recall ever being in Nokomis, Florida, and could not offer any credible or competent testimony as to any experience Plaintiff may have had in Nokomis, Florida.

After Plaintiff was shown the amended complaint, Plaintiff testified that the amended complaint did not refresh his recollection as to the specific properties involved in this lawsuit.

16

Case No. 8:13-CV-1845-T-17AEP

After Plaintiff was shown photographs of various restrooms, parking configurations, and pictures of Peter Lowell with his tape measure, Plaintiff testified that the photographs were not helpful in ascertaining which 7-Eleven store to which the photographs related, and the pictures alone did not refresh Plaintiff's recollection.  Plaintiff testified that Plaintiff would have to rely upon his attorneys to inform him as to which photographs correlated with which stores, and to inform him as to which report correlated with which store.

Plaintiff testified he was not deterred from traveling to any 7-Eleven store for any reason.

Plaintiff testified that Plaintiff intends to return to the 7-Eleven properties in the near future, but Plaintiff could not point to a specific year or month or date that Plaintiff may be in the vicinity of the 7-Eleven stores at issue.

Plaintiff testified that he did not have a specific recollection of going back to any of the 7-Eleven stores in order to check them for ADA compliance.


On Cross-Examination:

Plaintiff testified that Plaintiff did in fact go to the five 7-Eleven stores, and Plaintiff does remember going to the five 7-Eleven stores prior to this lawsuit.

Plaintiff testified that Plaintiff did in fact go back to the five 7-Eleven stores in December, 2013, and Plaintiff does remember going back to the five 7-Eleven stores.  Plaintiff testified that nothing was fixed by that time.

Plaintiff testified he always goes back to properties [on which Plaintiff has asserted claims in a lawsuit].

Plaintiff testified that Plaintiff would be driving up the West Coast of Florida between Miami and Tampa in the near future.

Plaintiff testified that, when he testified that he had never been to Nokomis, that testimony was not accurate, because Plaintiff did not remember, but Plaintiff does remember going to the stores.

Plaintiff testified that he would not return to a store that was not compliant.

17

Case No. 8:13-CV-1845-T-17AEP

On Redirect Examination:

> Plaintiff testified that, after hours of deposition regarding the five 7-Eleven properties, Plaintiff could not identify where the five properties are.

> Plaintiff testified that, although Plaintiff intended to return to the five properties, Plaintiff did not know where the properties were, aside from "outside of Tampa."

On February 18, 2014, Plaintiff's continuation deposition (Dkt. 80-1) was taken, in which Plaintiff changed his prior testimony.  Before the deposition,  Plaintiff Houston met with his counsel, and reviewed photographs and receipts.   Plaintiff's deposition includes the following:

> Plaintiff testified that, after further thought, as to his testimony that 80 percent of 7-Eleven stores were "bad" [noncompliant]  and 20 percent were "good" [compliant], there was something wrong with all of the stores.

> Plaintiff testified that, after further thought, Plaintiff returns to all properties, not 90 percent the properties.

> Plaintiff testified that he did not recall testifying as to the return visit to the five 7-Eleven properties in December, 2013, and now, a month later, Plaintiff does recall this return visit of December 2013, after refreshing his recollection by talking with his attorney, and reviewing some photographs and receipts.

> Plaintiff testified that, during Plaintiff's prior deposition, Plaintiff was shown the same photographs, but the photographs did not refresh his recollection.

> Plaintiff denied specific recollection of accessible parking at the Madeira Beach 7-Eleven store, except for the fact that there is some accessible parking.

> Plaintiff testified he did not know where the accessible parking was located at the Hudson, Treasure Island, Nokomis and Port Richey stores.

Case No. 8:13-CV-1845-T-17AEP

Plaintiff testified he did not have personal knowledge as to the location and configuration of the accessible route at any of the five 7-Eleven stores.

Plaintiff testified he did not have personal knowledge of the number of restrooms and the configuration or layout of the restrooms at any of the five 7-Eleven stores.

Plaintiff testified that his personal recollection of the configuration of the aisles is that it was like going down a hallway you couldn't enter, because of protruding racks, but could not be specific on which store.

Plaintiff testified that he recalled entering a restroom at one of the five 7-Eleven stores, but did not remember which store.

Plaintiff testified that, in order to offer his best testimony, he would need to see pictures.

Plaintiff testified that Plaintiff did not recall testifying [in his prior deposition] that, in order to offer his best testimony, Plaintiff would need to be shown reports associated with the five locations.

Plaintiff testified that Plaintiff did not recall testifying [in his prior deposition] that Plaintiff would need his attorney to assist him in reviewing the photographs and reports and interpreting them.

Plaintiff testified that Plaintiff will return to the five stores when this lawsuit is over, but could not identify a specific month.


In his Affidavit (Dkt. 109-1), Plaintiff Houston states:


6.  I constantly travel around Florida......
As a practical matter it is impossible for me to circle a date on a calendar as to exactly when I will visit a particular store and I don't know of anybody else who can.  This is a "convenience" store and such stores are the sorts of places that nobody makes advance plans to visit.  I simply rely on the fact that it will always be there when I need it.  Because so many 7-Eleven stores are inaccessible to me, I am deprived of a meaningful choice and opportunity to visit the stores anytime I want.

7.  I lived in Tampa for a period of time during the 1980s and I have
traveled back and forth from Ft. Lauderdale to Tampa and along the West
Coast of Florida on several occasions.  When I go, I frequently stop at
convenience stores along the way.  I intend to return to those travels and
the properties in question in the near future.

......

13.  In May of this year, I visited the five 7-Elevens that are the subject of
this lawsuit and encountered the same barriers that I encounter at its vast
majority of other stores.  These include non-compliant parking; non-
compliant curb ramps; improper slopes; obstructions blocking the
maneuvering spaces and pathways I need to access the store from the
parking lot and to get to the restroom; obstructions in the restrooms;
missing, obstructed or non-compliant grab bars; unwrapped pipes;
inaccessible commodes; improperly located commodes; flush controls on
the wrong side; narrow passageways; unsecured floor mats; insufficient
maneuvering spaces; inaccessible sinks; inaccessible doors; non-
compliant door and sink hardware.

......

15.  I have sued 7-Eleven on several occasions and it appears that this
chain only brings its stores into compliance when they are sued.  I know
for a fact that these violations are a repeated pattern and practice
throughout the chain and I expect to encounter the same kinds of
violations over and over from one 7-Eleven store to the next, no matter
where I go.

16.  ......With respect to other 7-Elevens all over Florida, I have been to a
countless number of them over the years and found many of them to have
discriminatory barriers.  In this regard, I did not visit them as a "tester" but
as a shopper.  When I visited the stores listed in this Affidavit with Peter
Lowell to take pictures and prove my visit and document the violations, I
would say that those particular visits were as a tester because I went there
to challenge the discriminatory barriers.  The reason why I take Pete
Lowell with me to take pictures is because I have a poor memory with
respect to counties, address, and the specifics of each and every property
I visit.  This is especially necessary in cases of 7-Eleven stores because
the stores all tend to look the same and the violations are essentially the
same from store to store.  I need to have the pictures in front of me to give
my best testimony with respect to any specifics.

Case No. 8:13-CV-1845-T-17AEP

......

20.  I have indeed returned to all 7-Eleven properties I've sued.  These
included a revisit with Peter Lowell, who took pictures of me at every
property.

......

23.  In the instant case, I revisited the subject properties in December
2013.  Pete Lowell again took pictures of me at each store; specifically the
Hudson store, the Madeira Beach store, Hudson store, Nokomis store,
Port Richey store and Treasure Island store......

24.  In each of the complaints I filed with respect to every 7-Eleven Store
referenced above, I revisited the properties.  I revisited all 7-Elevens
subject to cases that have closed and revisited all 7-Elevens that are the
subject of pending lawsuits, including the five stores at issue in this
lawsuit.  With regard to all 7-Elevens subject to pending lawsuits, I intend
to revisit them immediately after each respective case concludes.  Pete
Lowell and I have agreed that we will go together to each such property
and he will take my picture there to prove my revisitation.


The Court is troubled by the conflicts within Plaintiff's deposition testimony, made

under oath and penalty of perjury, and the conflicts between Plaintiff's deposition

testimony and Plaintiff's affidavit.   There is a striking difference between Plaintiff's

knowledge and recollection in his deposition, and Plaintiff's later affidavit.


The Court cannot resolve any issue which requires an assessment of Plaintiff's's

credibility on summary judgment.   Whether Plaintiff Houston encountered architectural

barriers at each 7-Eleven property, whether Plaintiff Houston knew of architectural

barriers and was deterred from returning to each 7-Eleven property, whether such

architectural barriers denied Plaintiff the opportunity to participate in or get the benefit of

the goods ands services of each facility, whether Plaintiff had continuing knowledge of

the presence of architectural barriers, whether Plaintiff has an intent to return to each 7-

Eleven property and whether Plaintiff is currently deterred from returning to each 7-

Case No. 8:13-CV-1845-T-17AEP

Eleven property remain material factual issues which are in dispute.  These issues will require an assessment of Plaintiff's credibility.

After consideration, the Court **denies** Defendant's Motion to Dismiss for lack of subject matter jurisdiction based on lack of standing, and denies Defendant's Motion for Summary Judgment.

B.  Mootness

Defendant argues that Defendant has brought three of the five 7-Eleven stores into compliance, one store has closed permanently, and the remaining store is not owned, leased or operated by Defendant.

To the extent that Defendant contends that Plaintiff's claims are moot under the doctrine of voluntary cessation, the Court denies Defendant's Motion for Summary Judgment.   Relevant factors include: 1) whether the challenged conduct is isolated and unintentional, as opposed to a continuing and deliberate practice; 2) whether the cessation of the offending conduct involves a genuine change of heart or was timed to anticipate suit; 3) whether, in ceasing the conduct, the defendant has acknowledged liability.  Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1184 (11th Cir. 2007). The heavy burden of persuading the Court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.  The Court recognizes that Defendant has expended substantial efforts to bring the stores into compliance; however, the allegations of a pattern and practice of noncompliance cloud the issue.

It remains to be seen whether Plaintiff can establish by a preponderance of the evidence that a permanent injunction is necessary, which is a different determination from whether a case is moot due to the voluntary cessation of offending conduct.

22

Case No. 8:13-CV-1845-T-17AEP

After consideration, the Court **denies** Defendant's Motion to Dismiss as to mootness, and **denies** Defendant's Motion for Summary Judgment.  Accordingly, it is

**ORDERED** that Defendant's Motion to Dismiss (Dkt. 76) is **denied**, Defendant's Motion for Summary Judgment is **denied**, and Defendant's Motion for Leave to Reply (Dkt. 116)  is **denied as moot**.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 30th day of October, 2014.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record