**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

JOE HOUSTON,
Individually,

     Plaintiff,

v.                                                             CASE NO. 8:13-CV-1845-EAK-AEP

7-ELEVEN, INC.,

     Defendant.

_____/

## MEMORANDUM OPINION

The Court conducted a bench trial during the month of November 2014. Plaintiff and Defendant were each afforded 18 hours, 36 hours total, to present evidence upon which the Court would determine findings of fact and conclusions of law.

## THE ALLEGATIONS

Plaintiff is a resident of Broward County, Florida, and bound to ambulate in a wheelchair with limited use of his hands. In his Amended Complaint, Plaintiff describes the Americans with Disabilities Act ("ADA") Accessibility Guidelines ("ADAAG") based inadequacies of five 7-Eleven convenient store facilities as follows:

### A. 13601 Gulf Boulevard, Madeira Beach, Florida

The facility fails to provide an accessible route free from impediments, all required grab bars, "proper clearances at all lavatories," "the proper arrangement of the toilet stall," and "protective features in all the restrooms." (Doc. 4 at 3–4). The restrooms also "fail to adhere to all the required reach limitations," lack sufficient "floor space to access all the

features in the restroom," lack a sufficient "size and arrangement of the toilet stall," and the mirrors "fail to meet [ADAAG] requirements." (Doc. 4 at 4–5).

### B. 9695 Gulf Boulevard, Treasure Island, Florida

The facility fails to provide accessible parking spaces on a level surface, and the spaces do not meet the location requirements. (Doc. 4 at 5). The facility also fails to provide an accessible route throughout the property. (Doc. 4 at 5). The restrooms lack: all required grab bars, sufficient "floor space to access all the features in the restroom," "protective features," a sufficient "size and arrangement of the toilet stall," sufficient "access to all essential parts of the restroom," and the mirrors "fail to meet [ADAAG] requirements." (Doc. 4 at 5–6).

### C. 10007 US 19, Port Richey, Florida

The facility fails to "adhere to a policy and procedure to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities," and "properly maintain accessible features and equipment required to be readily accessible to and usable by persons with disabilities." (Doc. 4 at 6). The parking spaces lack required features and do not meet location requirements. (Doc. 4 at 7). The facility fails to provide an accessible route free from impediments and the ramps along the accessible route do not provide adequate edge protection. (Doc. 4 at 7). The restrooms lack: all required grab bars, properly arranged dispensers, sufficient "floor space to access all the features in the restroom," and "protective features." (Doc. 4 at 7–8).

### D. 7611 State Road 52, Hudson, Florida

The facility fails to "adhere to a policy and procedure to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities," and

"properly maintain accessible features and equipment required to be readily accessible to and usable by persons with disabilities." (Doc. 4 at 8). The facility fails to provide accessible parking spaces on a level surface, the spaces lack required features and a sufficient access aisle. (Doc. 4 at 8). The facility lacks an ADAAG-compliant accessible route throughout the property, the ramps lack proper slope, and the mirrors in the restrooms "fail to meet [ADAAG] requirements." (Doc. 4 at 9).

### E. 1100 North Tamiami Trail, Nokomis, Florida

The restrooms lack: required grab bars, sufficient "floor space to access all the features in the restroom," protective features, a sufficient "size and arrangement of the toilet stall," and sufficient "access to all essential parts of the restroom." (Doc. 4 at 9–10). The restrooms also fail to "adhere to all the required reach limitations," "provide the proper arrangement of the toilet stall," provide proper door "hardware for disabled persons," and the mirrors "fail to meet [ADAAG] requirements." (Doc. 4 at 10). The ramps along the accessible route "do not provide adequate edge protection." (Doc. 4 at 10).

### JURISDICTION

Standing is a threshold jurisdictional requirement. A party who invokes federal jurisdiction has the burden of establishing he or she satisfied the "case or controversy" requirement of Article III of the Constitution. "[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact— an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly...trace[able] to the challenged action of the defendant, and not...th[e] result [of] the

independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992) (internal citations and marks omitted).  Plaintiff "must show a real and immediate threat of future injury."  Houston v. Marod Supermarkets, Inc., 733 F.3d 1323 (11th Cir. 2013).  Particularized means "the injury must affect the plaintiff in a personal and individual way."  Lujan, 540 U.S. at n.1. These elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case."  Id.  Accordingly, "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  Id.  Plaintiff bears the burden to establish standing by a preponderance of the evidence.  Id. at 561. Standing is determined as of the filing of the original complaint.  Focus on the Family v. Pinellas Suncoast Transit Authority, 344 F.3d 1263, 1275–1276 (11th Cir. 2003).

This Court previously analyzed Plaintiff's standing at the summary judgment stage. (Doc. 193 at 15–21).  The Court employed an exhaustive comparison and highlighted stark differences between Plaintiff's deposition and subsequent affidavit, but ultimately ruled summary judgment was not appropriate due to credibility determinations left for the trier of fact. (Doc. 193 at 21).  The standard, however, is different at trial; the Court, sitting as the trier of fact, assesses witness credibility.  United States v. Peters, 403 F.3d 1263, 1270 (11th Cir. 2005).  A trier of fact, observing witness demeanor, is entitled to disbelieve testimony and believe the opposite of what was said, United States .v. Rudisill, 187 F.3d 1260, 1268 (11th Cir. 1999); it is the prerogative of the trier of fact to disbelieve testimony. United States v. Sharif, 893 F.2d 1212, 1214 (11th Cir. 1990).

4

Plaintiff lacks a modicum of credibility. Defendant spent the majority of its 18-hour case-in-chief impeaching Plaintiff. Defense counsel meticulously questioned Plaintiff, offered Plaintiff the opportunity to refresh his recollection, and still Plaintiff was unable to answer questions and often refused to acknowledge the conflict between his trial testimony and that provided on an earlier date, such as depositions and affidavits. Plaintiff conceded he was not truthful at his deposition; he testified at trial that he purposefully misled counsel and prematurely concluded the deposition because he did not appreciate defense counsel's demeanor and method of questioning, and only testified to what he assumed counsel for 7-Eleven wanted to hear—despite testifying at the deposition that defense counsel was cordial and polite, and that Plaintiff had nothing to add to the information defense counsel requested and solicited.

To compound credibility issues, Plaintiff testified at deposition and trial that at the time the complaint was filed, he did not know locations of properties, he did not recognize cities in which the properties were located, without reviewing reports he could not recall specific violations at the properties except "restroom problems," he did not own a vehicle capable of travel outside of his home town, his health and safety concerns precluded him from driving long distances alone, and he could not estimate the distance between his home in Broward County—outside of the Middle District of Florida and approximately 230 miles from the closest location at issue in this suit—and the properties at issue in this lawsuit. Plaintiff also testified he personally purchased all items at the locations, but later admitted that testimony was "blatantly false" when 7-Eleven presented surveillance footage of Plaintiff's expert witness Peter Lowell paying for the items with Plaintiff nearby. Defense counsel further impeached Plaintiff and Mr. Lowell when evidence revealed the

two were not necessarily sharing costs—such as hotel rooms and meals—despite Plaintiff's and Mr. Lowell's representations that costs were later accounted and split. After hours of cross examination and obvious conflicts in the evidence, Plaintiff testified he intended to return to the properties after the litigation was resolved, but refused to provide any further detail as to when, why, or how he would return to the properties.

As the finder of fact, this Court finds Plaintiff is not credible. The Court afforded Plaintiff ample opportunity to establish standing by deferring on the issue at both summary judgment and mid-trial motion to allow Plaintiff to present his entire case-in-chief. Defendant continually impeached Plaintiff with nearly every question asked during both direct- and cross-examinations. Plaintiff's attempts to refresh his recollection were unavailing. Therefore, due to Plaintiff's complete lack of credibility, this Court finds that, based on the evidence submitted at trial, witness testimony, and Plaintiff's refusal to acknowledge impeached statements and conflicts in evidence, there is no real and immediate threat of future injury. This case is **DISMISSED** for lack of standing.

While standing is a threshold jurisdictional requirement, in the interest of judicial economy this Court will undertake an alternative analysis of the bench trial as though Plaintiff sufficiently established standing at trial; however, this analysis will still consider the Court's determination that Plaintiff lacks credibility, based on the foregoing analysis.

## FINDINGS OF FACT

1.      Plaintiff, Joe Houston, is a disabled person as defined in Title III of the Americans with Disabilities Act; Mr. Houston suffered a spinal injury, is confined to a wheelchair, and has limited use of his hands. Plaintiff resides in Pompano Beach, Florida.

CASE NO. 8:13-CV-1845-EAK-AEP

2.      Plaintiff has not lived in the Tampa Bay area for over 36 years, and has not, in a personal capacity, visited the Tampa Bay area in over 20 years.

3.      Plaintiff did not own or possess a mode of transportation capable of traveling or returning to the locations at the time he filed the subject action.

4.      Defendant, 7-Eleven, Inc., owns and operates a national chain of approximately 8,500 convenience stores bearing the same name.  These stores are places of public accommodation.  7-Eleven, Inc., owns and maintains some stores, while franchisees own and maintain other stores.

5.      In May of 2013, Plaintiff visited once and for the first time each of five 7-Eleven branded stores in the Tampa Bay area.  Plaintiff traveled to these locations with Plaintiff's expert witness Peter Lowell, who took pictures of the conditions at these stores and Plaintiff was present at the time and appears in some of those pictures.

6.      Plaintiff did not provide a basis for his travels from his residence in Pompano Beach, Florida, to the Tampa Bay area.

7.      These five stores are located at 9695 Gulf Boulevard, Treasure Island, Florida (the "Treasure Island Facility"); 13601 Gulf Boulevard, Madeira Beach, Florida (the "Madeira Beach Facility"); 1100 North Tamiami Trail, Nokomis, Florida (the "Nokomis Facility"); 10007 U.S. 19, Port Richey, Florida (the "Port Richey Facility"); and 7611 State Road 52, Hudson, Florida (the "Hudson Facility") (collective the "Facilities").

8.      All five Facilities were built in the 1980's before the passage of the ADA.

9.      These Facilities are located in five different cities, three counties, and exceed a 500-mile round trip from Plaintiff's residence in Pompano Beach, Florida.

10.     Defendant owns and maintains the Treasure Island, Madeira Beach, and Port Richey Facilities.

11.     Defendant notified the owner of the Nokomis Facility land that Defendant did not intend to renew the lease in 2013.

12.     The Nokomis Facility is no longer operational and Defendant lacks any ownership interest in the land.

13.     Defendant does not own, lease, maintain, repair, manage, or operate the Hudson Facility.  The franchisee that owns the Hudson Facility leases the land from an entity that is entirely unrelated to Defendant, and Defendant's only involvement in the Hudson Facility is to grant the franchisee the right to use 7-Eleven's trademark, business system, and equipment.

14.     The Facilities were originally built with two, small, single-user men's and women's restrooms.

15.     During Plaintiff's visits to the five Facilities, among other stores Plaintiff allegedly visited during the trip from Pompano Beach to the Tampa Bay Area, his expert witness Peter Lowell prepared "consultant" reports detailing alleged deficiencies and violations of federal law, in particular the ADA and ADAAGs.

16.     Mr. Lowell is a general contractor, but has limited training and experience with the ADA.  He completed a six-month course at American Contractor's School in 2009, has taken 14 hours of online coursework, and attended one year of college.

17.     Mr. Lowell is not an architect or engineer, and cannot prepare architectural or engineering plans or schematics.

18.     Mr. Lowell has never served on any architectural boards or commissions.

19.    Mr. Lowell has no professional ADA experience remodeling a restroom, designing facilities with accessibility elements, creating a curb ramp, or working on parking lots.

20.    Mr. Lowell has never pulled a permit for a place of public accommodation and admittedly is not familiar with the process by which one would pull a permit.

21.    Mr. Lowell's experience "in the construction field" related to his employment with AT&T as a facilities technician in which he strictly performed "electrical work" with no relationship to the ADA.

22.    Although he professed to consult for multiple law firms with respect to potential ADA violations, Mr. Lowell admitted he has only consulted for Mr. Bacon's firm.

23.    Mr. Lowell was not initially retained to inspect the five Facilities, but rather took Plaintiff to, and inspected, the Facilities, then brought them to the attention of Plaintiff's attorney Mr. Bacon.

24.    Mr. Lowell expects to be paid between $1,500 and $3,500 for each of the reports generated during that trip. These reports must include a photograph of Plaintiff at the properties.

25.    Mr. Lowell and Mr. Bacon often negotiate the prices for each generated report, and that negotiations are performed before, during, and after litigation.

26.    Mr. Lowell could not present a current accounting for the total amount Mr. Bacon paid for the reports, or the total amount outstanding for reports received.

27.    Mr. Lowell admitted to improperly citing non-existent violations when he mistakenly copied statements from reports unrelated to the five Facilities.

28. When Plaintiff filed the subject action, Plaintiff provided sworn deposition testimony that Plaintiff had no independent recollection of the following: 1) The Facilities at issue in this action; 2) Plaintiff's personal experiences at the Facilities that could lead to a lawsuit; 3) The dates Plaintiff visited the Facilities; 4) The causes of action against the Facilities; and 5) The cities in which the Facilities were located. Plaintiff testified that pictures and other materials would not assist in refreshing his recollection.

29. During trial, Plaintiff experienced a health issue that required him to return Pompano Beach, Florida, and forego presence during the remainder of the trial.

30. Six months after Plaintiff filed the subject action, Plaintiff could not demonstrate a basis for returning to the Tampa Bay area, or when he planned to do so. Plaintiff still could not recall whether or when he visited the cities of Nokomis or Hudson.

31. Plaintiff could not demonstrate any specific ties to the five cities or any reason he would visit the Tampa Bay area at any time in the future.

32. Plaintiff, seeking to preclude Defendant from positing certain legal arguments with respect to remediation, introduced evidence of other lawsuits against Defendant's locations throughout the state of Florida.

33. Plaintiff has sued over 400 businesses in Florida for violations of the ADA, but has rarely substantiated return visits to the businesses—or even the areas in which the business are located.

34. Plaintiff testified that his "sole purpose" for returning to the Facilities in August 2013 was to prove he returns to locations after filing a lawsuit.

35. Plaintiff could not demonstrate Defendant deterred Plaintiff from visiting any 7-Eleven properties throughout the state of Florida and beyond.

36.     Plaintiff testified he encountered the following barriers and violations at the Treasure Island Facility: 1) a display rack obstructed the pathway to the restroom; 2) the store had an unsecured carpet; 3) the restroom was inaccessible; 4) the commode was located too close to the sink; 5) the flush control was inaccessible; 6) the rear grab bar in the restroom was absent; 7) the toilet dispenser obstructed the side grab bar; 8) a trash can blocked the sink; 9) the mirror, paper towel dispenser, and soap dispenser were too high for Plaintiff to use; 10) the restroom was too small for a wheelchair to maneuver; 11) the pipes under the sink lacked insulation; 12) the handicapped parking space was excessively sloped and the ramp leading to the parking space had improper edges that could cause Plaintiff's wheelchair to tip or fall.

37.     Due to Plaintiff's and Mr. Lowell's diminished credibility, the Court finds as the trier of fact Plaintiff encountered the following barriers and violations at the Treasure Island Facility: 1) the rear grab bar in the restroom was absent; 2) the mirror, paper towel dispenser, and soap dispenser were too high for Plaintiff to use; 3) the restroom was too small for a wheelchair to maneuver; and 4) the ramp leading to the parking space had improper edges that could cause Plaintiff's wheelchair to tip or fall.  The remainder of the alleged barriers and violations involve movable objects, highly subjective and incredible assessments, or the Plaintiff's presentation of evidence did not sufficiently establish the barriers or violations.

38.     Plaintiff testified he encountered the following barriers and violations at the Madeira Beach Facility: 1) stored crates and stock items impeded the pathway to the restroom; 2) the restroom was too small for a wheelchair to maneuver; 3) the rear grab bar in the restroom was absent; 4) the side grab bar in the restroom was inaccessible due

to the placement of the toilet paper dispenser; 5) support posts blocked access to the sink; 6) the sink pipes were unwrapped; 7) a trash can obstructed the inadequate entrance to the restroom; 8) the mirror, paper towel dispenser, and soap dispenser were too high; 9) an unsecured floor mat; 10) the handicapped parking space signs were missing; 11) the handicapped parking space was excessively sloped and the pavement was cracked.

39.    Due to Plaintiff's and Mr. Lowell's diminished credibility, the Court finds as the trier of fact Plaintiff encountered the following barriers and violations at the Madeira Beach Facility: 1) the restroom was too small for a wheelchair to maneuver; 2) the rear grab bar in the restroom was absent; 3) the mirror, paper towel dispenser, and soap dispenser were too high; 4) the handicapped parking space signs were missing; and 5) the pavement was cracked.  The remainder of the alleged barriers and violations involve movable objects, highly subjective and incredible assessments, or the Plaintiff's presentation of evidence did not sufficiently establish the barriers or violations.

40.    Plaintiff testified he encountered the following barriers and violations at the Nokomis Facility: 1) the restroom was too small for a wheelchair to maneuver; 2) access to the sink was too narrow; 3) the sink pipes were unwrapped; 4) the door to the restroom had an inaccessible knob; 5) the restroom lacked sufficient space to afford swing clearance for the door with Plaintiff inside; 6) access to the commode was too narrow; 7) the commode lacked a grab bar; 8) the commode was too far away from the wall; 9) the paper towel dispenser was too high; 10) the required floor space beneath the paper towel dispenser was obstructed by a trash can; 11) the light switch was improperly located; and 12) the parking lot and curb ramp lacked proper edges.

12

41.  Due to Plaintiff's and Mr. Lowell's diminished credibility, the Court finds as the trier of fact Plaintiff encountered the following barriers and violations at the Nokomis Facility: 1) the restroom was too small for a wheelchair to maneuver; 2) the door to the restroom had an inaccessible knob; 3) the commode lacked a grab bar; 4) the paper towel dispenser was too high; and 5) the parking lot and curb ramp lacked proper edges.  The remainder of the alleged barriers and violations involve movable objects, highly subjective and incredible assessments, or the Plaintiff's presentation of evidence did not sufficiently establish the barriers or violations.

42.  Plaintiff testified he encountered the following barriers and violations at the Port Richey Facility: 1) the curb ramp had improper sides and the concrete was cracked; 2) the access aisle was non-level; 3) the restroom lacked a grab bar behind the commode; 4) the existing grab bar beside the commode was too short; 5) the toilet paper dispenser was out of reach; 6) the sink pipes were unwrapped; 7) a trash can obstructed the floor space underneath the hand dryer; and 8) the floor mat was unsecured.

43.  Due to Plaintiff's and Mr. Lowell's diminished credibility, the Court finds as the trier of fact Plaintiff encountered the following barriers and violations at the Port Richey Facility: 1) the concrete in the parking lot was cracked; 2) the restroom lacked a grab bar behind the commode; and 3) the existing grab bar beside the commode was too short. The remainder of the alleged barriers and violations involve movable objects, highly subjective and incredible assessments, or the Plaintiff's presentation of evidence did not sufficiently establish the barriers or violations.

44.  Plaintiff testified he encountered the following barriers and violations at the Hudson Facility: 1) the handicapped parking space was excessively sloped; 2) stored

crates obstructed the pathway to the restroom; and 3) the mirror in the restroom was too high.

45.     Due to Plaintiff's and Mr. Lowell's diminished credibility, the Court finds as the trier of fact Plaintiff encountered the following barriers and violations at the Hudson Facility: 1) the handicapped parking space was excessively sloped; and 2) the mirror in the restroom was too high.  The remainder of the alleged barriers and violations involve movable objects, highly subjective and incredible assessments, or the Plaintiff's presentation of evidence did not sufficiently establish the barriers or violations.

46.     During his testimony, Mr. Lowell often opined the suggested remediations at the Facilities were readily achievable and would cost approximately $2,000.  Mr. Lowell would base this opinion on standard form images from the ADAAG's, rather than customized blueprints or architectural drawings for the five Facilities, and he did not include cost breakdowns or financial analyses.

47.     Mr. Lowell's illustrations for "new" restrooms do not contain sinks, hand dryers, dispensers, and other features the ADA requires and Plaintiff alleges were out of compliance at the Facilities.

48.     Defendant paid $6,500 to hire an engineer, design plans to update the Facilities, and obtain a permit to begin the remediations.  The $6,500 cost did not include the labor or cost of materials to accomplish the repairs.

49.     To repair the parking lots, Mr. Lowell's suggested remediations were wholly inadequate and lacked sufficient detail, and Defendant was instead required to tear out entire parking lots to reduce the slopes.

50.     Defendant spent $60,000 to remediate the Madeira Beach Facility, which required tearing out walls, removing electrical wiring, moving plumbing, creating alternative access to the restroom, and flattening the parking area.

51.     Defendant spent $35,000 to remediate the Treasure Island Facility, which required similar work to the Madeira Beach Facility described above.

52.     Defendant spent $23,000 to remediate the Port Richey Facility, which required similar work to the Madeira Beach Facility described above.

53.     The actual work and costs associated with repairs at the Facilities vastly eclipsed the estimates and detail Mr. Lowell provided with his suggestion that the remediations were readily achievable, and disrupted store operations for three weeks at each property.

54.     Defendant's expert Jeffery Gross is an architect and general contractor Defendant has used in numerous ADA-related litigation matters.

55.     Mr. Gross is currently and has been a licensed architect since 1972.

56.     Prior to becoming an architect, Mr. Gross attended Union Apprentice School and worked as a carpenter.

57.     Mr. Gross obtained a bachelor's in architecture from the University of Florida, worked at an architectural firm for a year to gain experience and training, and then sat for an exam that involved drawing and designing a building, drawing a site plan, performing calculations for structural, mechanical, and electrical systems of buildings.

58.     Mr. Gross' architectural license requires continuing education at a minimum of 12 educational units per year; Mr. Gross takes approximately 25 per year.

59.     Mr. Gross teaches two ADA courses annually—one basic accessibility course, as well as one advanced accessibility course that is a component of a two-hour advanced accessibility course.

60.     Mr. Gross' lessons include reach limits, clear space, accessibility routes, and commonly-overlooked matters during inspections.

61.     As an architect, Mr. Gross and his firm provide annually approximately 60 to 90 architectural drawings that include accessibility elements.  Mr. Gross estimates he has probably provided thousands of these drawings and plans during his career.

62.     Mr. Gross also performed construction administration that required often weekly observations and review of the ongoing construction budget and costs.

63.     Mr. Gross has lectured to the American Bar Association, the American Institute of Architects, the Construction Specification Institute, and the Petroleum and Convenience Store Dealers.

64.     Mr. Gross is currently serving his third term on the Florida Building Commission as one of 26 commissioners.  Mr. Gross was appointed by three different Florida Governors and ratified by three different Florida Senates.

65.     Mr. Gross is the chairman of the Florida Building Commission Technical Advisory Committee Accessibility.

66.     Concerning the ADA, Florida's building regulations, and budgeting for construction projects, Mr. Gross' qualifications, experience, and education far exceed Mr. Lowell's qualifications, experience, and education.

67.     Mr. Gross testified to the previously-enumerated costs to remediate the Facilities.

68.     Mr. Gross testified the Treasure Island Facility is now ADA compliant. Mr. Lowell conceded the Treasure Island Facility is now ADA compliant with the exception of pipe wrapping underneath the sink coming loose. Plaintiff did not, however, present evidence to determine whether the pipes were hot water or drainage pipes. The Court finds as the trier of fact that Mr. Gross' testimony is credible and Mr. Lowell's is not.

69.     Mr. Gross testified the Madeira Beach Facility is now ADA compliant. Mr. Lowell conceded the Madeira Beach Facility is now ADA compliant with the exception of a small trash can blocking access to the soap dispenser and an unsecured floor mat. Plaintiff did not, however, present evidence of non-compliance beyond Mr. Lowell's testimony that lacked credible, substantiating evidence. The Court finds as the trier of fact that Mr. Gross' testimony is credible and Mr. Lowell's is not.

70.     Mr. Gross testified the Port Richey Facility is now ADA compliant. Mr. Lowell disputed that position and listed five violations at the property. Mr. Gross rebutted each allegation with measurements and citations to specific ADAAG's and exceptions to the ADAAG's—both notably absent from Mr. Lowell's follow up report. The Court finds as the trier of fact that Mr. Gross' testimony is credible and Mr. Lowell's is not.

71.     Mr. Michael Hall testified as the facilities manager for the five Facilities.

72.     Mr. Hall testified Defendant did not perform any ADA upgrades to the Hudson Facility due to the franchise agreement. Mr. Hall highlighted the stark differences between Defendant-owned facilities and franchise-owned facilities.

73.     For Defendant-owned facilities, Defendant: 1) owns or leases the real property upon which the facility is located; 2) is responsible for all financial obligations; 3) hiring and training of employees or independent contractors.

74.    Defendant: 1) is not a party to the lease agreement for the Hudson Facility; 2) does not control or responsibility over the building or premises; 3) does not participate in day-to-day management of the premises; 4) licenses its trademark to the Hudson Facility; 5) could breach in the event of multiple, habitual violations, but would need to provide opportunities to the franchise to cure the breach.

## CONCLUSIONS OF LAW

### A. Standing

The Court incorporates by reference the discussion on standing, <u>supra</u>, and finds Plaintiff lacked standing at the time the original complaint was filed.

### B. Discrimination

To prove discrimination under Title III of the ADA, Plaintiff must prove that 1) he is a disabled person; 2) Defendant owns, leases, or operates a place of public accommodation; and 3) Plaintiff was denied full and equal treatment because of his disability.  42 U.S.C.A. § 12182(a).  For pre-existing buildings, Plaintiff must present evidence of a barrier, removal of which is "readily achievable."  <u>Gathright-Dietrich v. Atlanta Landmarks, Inc.</u>, 452 F.3d 1269, 1273 (11th Cir. 2006).  Readily achievable means "easily accomplishable and able to be carried out without much difficulty or expense" under the particular circumstances of the case.  <u>Id.</u> at 1273.

Plaintiff did not elicit sufficient evidence to prove by a preponderance of the evidence that Defendant owned, leased, or operated the Hudson Facility.  Plaintiff argues Mr. Hall's testimony that 7-Eleven receives a share of profits, owns "some" equipment at the facility, and exercises some control over the franchisee is sufficient to bring Defendant within the jurisdiction of the ADA.  The Court is unmoved.  The testimony from Defendant's

18

representatives indicated little more than a franchise agreement. Defendant does not own, lease, or operate the facility, and Defendant's exercise of some level of control does not rise to the level of effectively owning, leasing, or operating the facility—Defendant does not participate in day-to-day activities or decision-making, and Defendant's letter to the Hudson Facility outlining the allegations strengthens Defendant's contention that it did not exercise control, but rather informed the Hudson Facility of the allegations to be remediated. As a matter of law, Defendant is not responsible or culpable for the allegations at the Hudson Facility.

Plaintiff did not elicit sufficient evidence to prove by a preponderance of the evidence that Defendant intended to re-open a 7-Eleven convenience store at the Nokomis Facility location. It is uncontested that Defendant notified the landlord of the property that it would not renew the lease and the Nokomis Facility is closed. Absent proving these facts, Plaintiff cannot prove the necessary element of threatened future harm. Therefore, as a matter of law, Plaintiff's claim for discrimination at the Nokomis Facility fails as a matter of law.

Concerning the barriers and violations at the Treasure Island Facility this Court found credible, this Court finds that Plaintiff failed to prove the renovations and remediations to the size of the restroom and the ramp were readily achievable. Mr. Lowell failed to provide sufficiently-detailed schematics, blue prints, or other customized drawings, as well as a detailed financial breakdown, to remedy the issues. Therefore, the discrimination Plaintiff proved is: 1) an absent rear grab bar; and 2) the height of the mirror and dispensers.

Concerning the barriers and violations at the Madeira Beach Facility this Court found credible, this Court finds that Plaintiff failed to prove the renovations and remediations to the size of the restroom and the cracked pavement were readily achievable. Mr. Lowell failed to provide sufficiently-detailed schematics, blue prints, or other customized drawings, as well as a detailed financial breakdown, to remedy the issues. Therefore, the discrimination Plaintiff proved is: 1) an absent rear grab bar; 2) the height of the mirror and dispensers; and 3) missing handicapped parking signs.

Concerning the barriers and violations at the Port Richey Facility this Court found credible, this Court finds that Plaintiff failed to prove the renovations and remediations to the cracked pavement were readily achievable. Mr. Lowell failed to provide sufficiently-detailed schematics, blue prints, or other customized drawings, as well as a detailed financial breakdown, to remedy the issues. Therefore, the discrimination Plaintiff proved is: 1) an absent rear grab bar; and 2) a grab bar that was too short.

### C. Mootness

The remaining matters discussed in section B, supra, are moot as a matter of law. "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant of meaningful relief, then the case is 'moot' and must be dismissed." Trojano v. Supervisor of Elections in Palm Beach County, Fla., 382 F.3d 1276 (11th Cir. 2004) (citing U.S.C.A. Const. Art. 3 § 2, cl. 1). "Mootness is a jurisdictional defect that can be raised at any time by the parties or the court sua sponte." Barilla v. Ervin, 886 F.2d 1514, 1519 (9th Cir. 1989). "If an ADA plaintiff has already received everything to which he would be entitled, i.e., the challenged conditions have been remedied, then these particular claims are moot absent any basis for concluding

CASE NO. 8:13-CV-1845-EAK-AEP

that this plaintiff will again be subjected to the same wrongful conduct by this defendant."

Parr v. L & L Drive-Inn Restaurant, 96 F.Supp.2d 1065, 1087 (D. Hawaii, May 16, 2000) (internal marks and citations omitted).  Plaintiff's expert agreed the remaining issues at the Treasure Island, Madeira Beach, and Port Richey Facilities were previously remedied and Plaintiff did not present any evidence to the contrary.  While Plaintiff argues 7-Eleven has in the past remedied issues and allowed them to fall into disrepair, the Court finds no plausible basis to determine these three locations—after having spent in excess of $100,000 on the remediations—will allow grab bars to fall into disrepair or permanently-affixed signs, mirrors, and dispensers to be moved.

For the reasons discussed above in section B, Plaintiff's claims against the Nokomis store are also moot.

### D. Injunctive Relief

Because the Court finds Defendant lacks standing, has not proved remediations are readily achievable, and the remaining matters are moot, there is no basis for injunctive relief.  Plaintiff's request for injunctive relief is **DENIED**.

Accordingly, it is **ORDERED** and **ADJUDGED** that Plaintiff's case is **DISMISSED** for lack of standing.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this _1st_ day of April, 2015.


ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:    All Counsel and Parties of Record